UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CANTU,

                Plaintiff,

                                          Case No. 07-CV-10339
vs.                                    HON. GEORGE CARAM STEEH

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

                Defendants.
_____/

<u>ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (#7)</u>
<u>AND DENYING PLAINTIFF'S REQUEST TO FILE A THIRD AMENDED COMPLAINT</u>

      Defendants move to dismiss plaintiff Mario Cantu's employment discrimination claims alleged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., the Michigan Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. §§ 37.2101 et seq., and 42 U.S.C. § 1983, as well as Cantu's claims of conspiracy and gross negligence.  A hearing on the motion was held on June 21, 2007.  For the reasons set forth below, defendants' motion to dismiss will be GRANTED, IN PART, and DENIED, IN PART.  Cantu's request for leave to file a Third Amended Complaint will be DENIED.

## I. Background

      Plaintiff Cantu alleges in his March 28, 2007 Second Amended Complaint that he is a Correctional Officer (CO) at Michigan's Ryan Correctional Facility (RCF).  On August 4, 2001, Cantu allegedly reported to his superiors that fellow CO Tamika Fulson, a popular black female, was alone with a prisoner in a bathroom in violation of institutional policy.  Fulson was allegedly discharged as a result of Cantu's report.

      Cantu continues by alleging that the majority of RCF COs are black, and that he is

white and of Hispanic descent.  Cantu alleges that, since Fulson's discharge, he has been harassed by other COs who have called him a "snitch," subjected him to derogatory remarks regarding being "white" and Hispanic, flattened the tires on his vehicle, and threatened him with physical harm.  Cantu alleges that only a "half-hearted" investigation of his internal harassment complaints was conducted by RCF staff, and that he was intentionally assigned to mandatory over-time shifts with harassing COs.  Cantu alleges that two 2006 transfer requests he filed were denied even though similar transfer requests made by black COs are freely granted.   The named defendants are the Michigan Department of Corrections (MDOC), RCF, and seven individuals sued in both their individual and official capacities: RCF Warden Raymond Booker, RCF Food Service Worker Dunbar, and RCF employees Lt. CO Ken Allen, CO Terry Taylor, CO George Reed, CO Todd Campbell, and Katrina Talley.  Cantu alleges disparate treatment, hostile work environment, and retaliation in violation of Title VII (Counts I-III) and the ELCRA (Counts IV-VI), violations of the First and Fourteenth Amendments actionable under 42 U.S.C. § 1983 (Counts VII-IX),  "Constitutional Violations of Defendant Employer" (Count X), conspiracy (Count XI), gross negligence (Count XII), and a claim for injunctive relief (XIII).


## II. Standards of Review

Defendants move to dismiss Cantu's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction relative to the defense of Eleventh Amendment immunity, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted.

Where federal subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction exists. Michigan S RR Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc., 287 F.3d 568, 573 (6th Cir. 2002). In reviewing a motion to dismiss under Rule 12(b)(1), the court is empowered to resolve factual disputes. Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986). "The court has wide discretion to consider materials outside the complaint in assessing the validity of its jurisdiction." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990).

If personal jurisdiction is properly challenged in a motion for dismissal under Rule 12(b)(2), the plaintiff may not rely solely on the pleadings, but must, by affidavit or otherwise, set forth facts showing that the court has jurisdiction. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Absent an evidentiary hearing, the court must construe the pleadings and affidavits in a light most favorable to the plaintiff, and the plaintiff must make only a prima facie showing that personal jurisdiction exists. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

To prevail on a motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief may be granted, the defendant must demonstrate that, accepting the plaintiff's well pleaded factual allegations as true, the plaintiff can prove no set of facts consistent with those allegations that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328, 330 (6th Cir. 1990). The court is not required to accept as true alleged legal conclusions or unwarranted factual inferences. Gregory v. Shelby County, Tenn., 220 F.3d 433, 446 (6th Cir. 2000); Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). The "complaint must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under some viable legal theory."  Scheid, 859 F.2d at 436 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984)).

### III. Plaintiff's Evidentiary Response

Cantu proffers documentary evidence in response to defendants' motion to dismiss. The materials indicate that Cantu reported former CO Fulson for misconduct on August 4, 2001.  Three years later, during September through November of 2004, Cantu reported to his superiors that defendant CO Campbell, a black male, stared at him and twice hit the bill of his hat during roll-call.  As part of an internal investigation, CO Campbell asked Cantu in a questionnaire: "Afraid to work on grounds?" which Cantu perceived as a threat. Supervisor defendant Lt. CO Allen allegedly never completed the investigation prompted by Cantu's report.

Over a year later, on March 7, 2006, Cantu reported defendant CO Reed, a black male, for allegedly entering a restroom and yelling "snitches get killed."  Cantu reportedly asked CO Reed to repeat the remark, and CO Reed responded: "snitches get killed in here."  Cantu later asked CO Reed why he had made these statements, and CO Reed allegedly replied "you are a snitch and a little bitch," and that Cantu had "something coming real soon and that he better watch his back."  On March 9, 2006, Cantu reported CO Reed for flicking Cantu's hat off and making a threat.  Cantu's work schedule was allegedly changed five days later, on March 12, 2006, "forcing" Cantu to take days off rather than work with CO Reed.  On May 6, 2006, Cantu complained that he should not have to work mandatory overtime on the June 2, 2006 shift with CO Reed pending completion of the investigation of the March 9, 2006 hat incident.

On June 6, 2006, Cantu reported to his superiors that defendant Food Service

Worker Dunbar, a black male, became belligerent and threatened Cantu after Cantu made Dunbar clear a metal detector and submit to a pat-down search before proceeding through a prison gate.

On October 25, 2006, Cantu sent a request to transfer to the Thumb Correctional Facility to "Dep. Ray," stating "I would appreciate any help you could offer in helping me transfer to the Thumb Correctional Fac.."  On November 17, 2006**,** Cantu reported that defendant CO Taylor had called him a "pussy."  Cantu reported that CO Taylor "started his comments after the Reed incident," and that he has "had to endure many harassment incidents like [this] after many officers perceiving me as a snitch."  On December 11, 2006, Cantu reported defendant Lt. CO Allen for harassment arising from comments Allen allegedly made to others, including that "Shoot, Cantu runs to the whites when he has problems with blacks, and when he has problems with whites he claims he's Latino!" Cantu filed an internal report with RCF, and sent a copy of the report to defendant Warden Booker complaining that his October 25, 2006 transfer request had not been processed, and that he feared retaliation for reporting Lt. CO Allen.

## IV. Analysis

### A. Right-To-Sue-Letter

Defendants argue they are entitled to dismissal of the Title VII claims due to Cantu's failure to allege or otherwise show that he has received a right-to-sue letter from the EEOC before filing suit, as required by 42 U.S.C. § 2000e-5(f)(1).  Cantu responds by proffering a copy of a November 11, 2006 EEOC right-to-sue letter, demonstrating that he has met the non-jurisdictional requirement for filing Title VII claims in federal district court.  See Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 310 (6th Cir. 2000) (citing Portis

v. Ohio, 141 F.3d 632, 634 (6th Cir. 1998) and finding that apprising district court of right-to-sue letter on moving for reconsideration of summary judgment cured non-jurisdictional defect).  Defendants are not entitled to the dismissal of Cantu's Title VII claims under Rule 12(b)(6) based on Cantu's failure to procure a right-to-sue letter.  Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

### B. Title VII Individual Liability

Defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley argue they are entitled to dismissal of Cantu's Title VII claims because Title VII does not provide for individual employee or supervisor liability as a matter of law.  The court agrees.  It is well established in the Sixth Circuit that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." Wathen v. General Electric Co., 115 F.3d 400 (6th Cir. 1997).  Defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, in their individual capacities, are entitled to dismissal of Cantu's Title VII claims pursuant to Rule 12(b)(6) as a matter of law.  Id.; Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994).  Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley cannot be held personally liable under Title VII in their official capacities; such a claim is simply a Title VII claim against Cantu's governmental employer.  Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, in their official capacities, are likewise entitled to the dismissal of Cantu's Title VII claims under Rule 12(b)(6) as a matter of law.  Id.; Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

## C. Eleventh Amendment Immunity

Defendants do not dispute that Title VII claims are not subject to Eleventh Amendment immunity.  See Freeman v. Mich. Dept. of State, 808 F.2d 1174, 1177 (1987) (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976) as recognizing that Congress abrogated states' Eleventh Amendment immunity to Title VII claims).  Defendants instead argue that Eleventh Amendment immunity bars Cantu's 42 U.S.C. § 1983 claims and state law ELCRA claims.  Defendants move for dismissal under Rule 12(b)(2), lack of personal jurisdiction, citing Ku v. State of Tennessee, 322 F.3d 431, 434 (6th Cir. 2003) for the proposition that an Eleventh Amendment immunity defense should be treated "like the defense of personal jurisdiction [] that can be permanently waived when a State fails to raise the objection at the outset of proceedings."  Further, "unlike subject-matter jurisdiction, the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity."  Nair v. Oakland County Community Mental Health Authority, 443 F.3d 469, 474 (6th Cir. 2006) (internal quotation omitted).

Eleventh Amendment immunity bars a § 1983 lawsuit brought by a citizen against his own state and state officials acting in their official capacities unless the state waives its immunity.  Wolfel v. Morris, 972 F.2d 712, 718 (6th Cir. 1992).

> Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-101, 104 S.Ct. 900, 79 L.Ed. 2d 67 (1984); Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed. 2d 1114 (1978); O'Hara v. Wiggington, 24 F.3d 823, 826 (6th Cir. 1993).  With regard to civil rights suits, Congress has not expressly abrogated Eleventh Amendment immunity by statute, Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  Abick v. Michigan, 803 F.2d

874, 877 (6th Cir. 1986). In numerous unpublished decisions, the Sixth Circuit has specifically held that civil rights actions against the MDOC are barred by the Eleventh Amendment. See, e.g., Turnboe v. Stegall, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); Erdman v. Mich. Dep't. of Corr., No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); Cullens v. Bemis, No. 92-1582, 1992 WL 337688, at * 1 (6th Cir. Nov. 18, 1992); Adams v. Mich. Dep't. of Corr., No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987).

Davis v. Mich. Dep't. of Corr., No. 1:07-cv-200, 2007 WL 1040370, at *2 (W.D. Mich. Apr. 7, 2007). Further, states and state officials acting in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983. Wolfel, 972 F.2d at 718 (citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989)). MDOC, as an "arm of the state," is entitled to Eleventh Amendment immunity. Turnboe, 2000 WL 1679478, at *2.

"[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Pennhurst, 465 U.S. at 121. State law claims against state officials are thus barred by the Eleventh Amendment, "and this is true even though there would otherwise be supplemental jurisdiction." McNeilus Truck & Mfg., Inc. v. State of Ohio ex rel. Montgomery, 226 F.3d 429, 438 (6th Cir. 2000) (citing Pennhurst, 465 U.S. at 123).

MDOC and RFC, and defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, in their official capacities, have met their burden of coming forward to show that they are entitled to Eleventh Amendment immunity as to Cantu's § 1983 claims of violations of the First and Fourteenth Amendments. Nair, 443 F.3d at 474; Wolfel, 972 F.2d at 718; Davis, 2007 WL 1040370, at *2 (and cases cited therein). MDOC and RFC, and defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, in both their individual and official capacities, have also met their burden of coming forward to show that

they are entitled to Eleventh Amendment immunity as to Cantu's Michigan ELCRA claims[1].

Nair, 443 F.3d at 474; Pennhurst, 465 U.S. at 121; McNeilus, 226 F.3d at 438.  Defendants

timely raised the Eleventh Amendment immunity defense in this pre-answer motion for

dismissal.  Under either Rule 12(b)(1) or Rule 12(b)(2), MDOC and RFC, and defendants

Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley in their official capacities, are

entitled to dismissal of Cantu's § 1983 claims as a matter of law.  Ohio Nat'l Life Ins. Co.,

922 F.2d at 325; CompuServ, Inc., 89 F.3d at 1262;  Nair, 443 F.3d at 474.  Likewise,

under either Rule 12(b)(1) or Rule 12(b)(2), MDOC and RFC, and defendants Booker,

Dunbar, Allen, Taylor, Reed, Campbell, and Talley, in both their individual and official

capacities, are entitled to dismissal of Cantu's ELCRA claims as a matter of law.  Id.

### D. Conspiracy

Defendants argue Cantu's conspiracy claim fails for lack of specificity.  Cantu's

conspiracy claim does not allege whether it is advanced under federal or state law.

Consistent with the analysis in Section IV, C, above, a federal conspiracy claim under §

1985 is barred by Eleventh Amendment immunity as alleged against MDOC, RFC, and the

defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley in their official

capacities.  Wolfel, 972 F.2d at 718; Davis, 2007 WL 1040370, at *2 (and cases cited

therein).  A state law conspiracy claim is completely barred by Eleventh Amendment

immunity.  Pennhurst, 465 U.S. at 121; McNeilus, 226 F.3d at 438.

As to a possible federal conspiracy claim alleged against Booker, Dunbar, Allen,

---

[1]    The court need not address the defendants' arguments going to the merits of
Cantu's ELCRA claims, that the claims are barred by the statute of limitations, fail to allege
a timely and actionable "adverse action," and fail to plead unwelcome racial or national
origin conduct or communications.  See Defendants' April 23, 2007 Brief, at 6-11.

Taylor, Reed, Campbell, and Talley in their individual capacities, a federal conspiracy claim is subject to dismissal if, in its most liberal construction, the claim is conclusionary and void of factual allegations necessary to support a conspiracy theory. Jaco v. Bloechle, 739 F.2d 239, 245 (6th Cir. 1984). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." Weberg v. Franks, 229 F.3d 514, 526 (6th Cir. 2000). "All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused the injury to the complainant." Id. (quoting Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985)).

Cantu's conspiracy claim as set forth in Count XI alleges "[t]he actions of the individual Defendants were concerted acts, taken in combination with one another to accomplish an unlawful purpose, as set forth in the preceding Counts," and that "[t]he individual Defendants are guilty of conspiracy." Second Amended Complaint, ¶¶ 183-84, at 27.

Within the body of the Second Amended Complaint, Cantu alleges that:

29. Black employees of [RCF] receive preferential treatment, while non-black officers are verbally harassed, their property is vandalized (their cars are scratched and fecal matter spread upon their equipment) and their safety is frequently threatened, or intentionally compromised.

30. Plaintiff is of Hispanic and Caucasian descent and is, racially and ethnically, in the minority of the correctional officers at [RCF].

31. Following the Fulson incident, Plaintiff has been subject to increased racial and ethnic harassment, of which the supervisory and management staff of [RCF] are well-aware.

32. Initially, following the Fulson incident, Plaintiff simply ignored the harassment in the hope that it would settle down.

33.  The harassment did not settle down, however, and he had to endure being called a "snitch," an incident where a tire to his car was flattened, and being threatened with bodily harm.

34.  He also had to endure derogatory comments from black employees regarding his being "white" or "Hispanic."

35.  The command staff at [RCF] are aware of the ongoing discrimination, harassment and threats that Plaintiff has had to endure.

36.  The individual defendants have either directly acted in a discriminatory, harassing and threatening manner toward Plaintiff, or they have had knowledge of that discriminatory, harassing and threatening behavior and the authority to stop that behavior but they have refused to act to stop the violations of Plaintiff's constitutional rights.

37.  When Plaintiff reported the harassment that he was undergoing an "investigation" was begun, but it was half-hearted.

38.  Upon information and belief, individual defendant Booker, who is a black male, did not want an investigation to confirm that non-black employees had been racially harassed and ethnically intimidated.

39.  Notwithstanding the knowledge that the [RCF] command staff clearly had of the racial harassment and ethnic intimidation he'd had to endure, Plaintiff was assigned to work mandatory overtime shifts that would place him in direct contact with the black officers who'd harassed and threatened him.

40.  On the occasions that he had to work with the very officers who'd harassed him and threatened his safety, Plaintiff was placed in immediate apprehension for his own safety.

*       *       *

42.  In October of 2006, Plaintiff submitted a transfer request from [RCF].

43.  On December 11, 2006, Plaintiff submitted another request that he be allowed to transfer.

44.  He also contacted his union, which unsuccessfully tried to intervene, but to the present day is forced to endure a hostile and dangerous work environment.

45.  Upon information and belief, black employees of the [MDOC] are freely allowed to transfer between correctional facilities.

46.  Upon information and belief, the fact that Plaintiff is non-black played a substantial and significant part in the reception that his transfer requests received, as opposed to the considerably warmer reception accorded the transfer requests of black employees of the [MDOC].

47.  The above is not intended as a complete cataloguing of every instance of discrimination and unlawful treatment that Plaintiff has had to suffer through during the course of his career with the [MDOC].

Second Amended Complaint, at 4-6.

Cantu's § 198 First Amendment retaliation claim alleges:

151.  Upon information and belief, Plaintiff's reports regarding the wrongdoing in the Fulson, Talley, Campbell, Reed, Dunbar and Taylor incidents was a substantial or motivating factor in the discriminatory and harassing treatment that he had to endure from individual defendant Allen, and which treatment has been endorsed by individual defendant Booker.

Second Amended Complaint, at 21.  Cantu's § 1983 Fourteenth Amendment Equal

Protection claim alleges:

159.  Despite the fact that Defendants were on notice that Plaintiff was being treated differently than other employees on the basis of race, they failed to protect him.

160.  In fact, adverse action was taken against Plaintiff on the above referenced characteristics that were not taken against similarly situated employees who did not share Plaintiff's racial characteristics.

Second Amended Complaint, at 22.  Cantu's § 1983 Fourteenth Amendment Substantive

Due Process claim alleges:

167.  The policies and procedures enacted by Defendants and their arbitrary and capricious acts toward Plaintiff rendered him more vulnerable to racial discrimination, and to physical attack.

168.  Because Defendants' policies and procedures and arbitrary actions rendered Plaintiff more vulnerable to racial discrimination, and to physical attack, their actions implicated fundamental rights expressly guaranteed by the Constitution of the United States, or arising by implication of law.

169.  In addition, the arbitrary and capricious nature of Defendants' actions

and their deliberate disregard of Plaintiffs' bodily integrity, by creating an intentionally dangerous work environment for him, violated his Constitutional rights.

\*      \*      \*

172.  Notwithstanding that Defendant employer knew or should have known of the danger to Plaintiff's fundamental rights, Defendant employer deliberately, callously, arbitrarily, and capriciously chose not to correct the situation it had created and perpetuated.

Second Amended Complaint, at 23-24.  As to the First Amendment claim, the defendants are alleged to have acted "within the scope of their employment and/or color of law . . . ." Id. ¶ 142, at 20.  As to the Fourteenth Amendment claims, the defendants allegedly were "at all times relevant to this action acting under color of law and within scope of their employment."  Id. ¶ 158, at 22; ¶ 165, at 23.

Applying a liberal construction to Cantu's conspiracy claim as alleged in the Second Amended Complaint, and accepting all factual allegations as true, the claim is subject to dismissal under Rule 12(b)(6) because it alleges only legal conclusions of a conspiracy without factual allegations necessary to support a theory that the defendants agreed to a single plan to either deprive Cantu of his alleged First Amendment right to report employee misconduct at RCF, deprive Cantu of his alleged Fourteenth Amendment right to be treated the same as similarly situated RCF employees, or to deprive Cantu of his alleged Fourteenth Amendment right to be free from arbitrary and capricious employment policies. Weberg, 229 F.3d at 526; Gregory, 220 F.3d at 446; Scheid, 859 F.2d at 436; Jaco, 739 F.2d at 245.  The Second Amended Complaint does not allege specific factual allegations regarding Talley, Campbell, Reed, Dunbar, and Taylor, but simply refers repeatedly to the "Talley, Campbell, Reed, Dunbar and Taylor incidents."  Defendant Booker allegedly did

not want an investigation of Cantu's reported harassment based only "[u]pon information and belief." Likewise on "information and belief," transfer requests of black MDOC employees at RCF are more freely granted than white employees, Cantu's status as a "non-black" played a substantial and significant part in the treatment of his transfer requests, and the reports filed by Cantu were a substantial and motivating factor in the discriminatory and harassing treatment Cantu received from defendant Lt. CO Allen, "and which treatment [was] endorsed by individual defendant Booker." Even accepting the minimal factual allegations as true, the Second Amended Complaint is devoid of direct or indirect factual allegations of an agreement among Booker, Dunbar, Allen, Taylor, Reed, Campbell, and/or Talley to violate Cantu's constitutional rights.

The lack of factual allegations to support a requisite agreement among the defendants is actually supported by Cantu's proffered evidence. CO Campbell allegedly stared at Cantu and hit the brim of Cantu's hat twice in the Fall of 2004, more than three years after Cantu reported Fulson in August 2001. Not until more than a year later in March of 2006 did CO Reed first call Cantu a "snitch" and threaten that Cantu "better watch his back." Food Service Worker Dunbar allegedly became belligerent in June 2006 only after Cantu made Dunbar pass through a metal detector and submit to a pat-down search. CO Taylor called Cantu a "pussy" in November 2006 allegedly because of the March 2006 incident with CO Reed. Lt. CO Allen first complained to another CO in December 2006 about Cantu's racial posturing. Warden Booker allegedly ignored Cantu's written December 2006 complaint that his transfer request had not yet been processed by "Dep. Ray." Only an unwarranted inference arises that Warden Booker, Food Service Worker Dunbar, Lt. CO Allen, CO Taylor, CO Reed, CO Campbell, and CO Talley *agreed among*

*each other* over the course of six years to violate Cantu's First Amendment and Fourteenth Amendment rights.  Gregory, 220 F.3d at 446; Scheid, 859 F.2d at 436.  The fact that one, if not all, of these defendants are black does not legitimize the otherwise unwarranted inference of a conspiracy.  Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley are entitled to the dismissal of Cantu's conspiracy claim as a matter of law.  Weberg, 229 F.3d at 526; Gregory, 220 F.3d at 446; Scheid, 859 F.2d at 436; Jaco, 739 F.2d at 245.

Although not argued by the parties and unnecessary to the court's decision, Cantu's conspiracy claim is also subject to dismissal pursuant to the intracorporate conspiracy doctrine.  See Johnson v. Hills & Dales General Hospital, 40 F.3d 837, 839-40 (6th Cir. 1994) (recognizing that defendant employees of the same defendant employer cannot, as separate "people," form a civil rights conspiracy where they allegedly act within the scope of their employment).  The doctrine applies to governmental bodies.  See Ashiegbu v. Purviance, 76 F.Supp.2d 824, 830 (S.D. Ohio 1994).  Cantu has alleged that the individual defendants all acted within the scope of their governmental employment while violating his constitutional rights.  Defendants are entitled to dismissal of Cantu's conspiracy claim under the  intracorporate conspiracy doctrine.  Id.; Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

### E.  Qualified Immunity

Defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley argue they are entitled to dismissal of Cantu's § 1983 claims in their individual capacities based on qualified immunity because Cantu has failed to allege they violated a clearly established constitutional right.  Qualified immunity is a two-part test: (1) whether, on the facts as alleged, the official violated a constitutional right; and (2) whether the constitutional right

that was violated was "clearly established" at the time of the violation, as would be clear to a reasonable officer that his conduct was unlawful in the situation. Perez v. Oakland County, 466 F.3d 416, 427 (6th Cir. 2006). The right must be established in the specific context of the case, not as a broad general proposition, and "[i]f reasonable officers could disagree about the lawfulness of the conduct in question, immunity must be recognized." Id. at 427 (quoting Key v. Grayson, 179 F.3d 996, 1000 (6th Cir. 1999)). "Where . . . the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability." Fisher v. City of Memphis, 234 F.3d 312, 317 (6th Cir. 2000) (quoting Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir.1998)). Dismissal under Rule 12(b)(6) based on qualified immunity is appropriate here only if Cantu can prove no set of facts consistent with the allegations in his complaint that would defeat qualified immunity. Id.; Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

Cantu's First Amendment claim alleges that each of the individual defendants retaliated against him for exercising his constitutional right to file reports against Fulson, Talley, Campbell, Reed, Dunbar and/or Taylor. Cantu's Fourteenth Amendment Equal Protection claim alleges the defendants failed to protect him from being treated differently than other MDOC employees on the basis of race, and that the defendants took "adverse action" against him that was not taken against similarly situated employees. Cantu's Fourteenth Amendment Substantive Due Process claim alleges the defendants enacted policies and procedures, acted arbitrarily and capriciously, and intentionally created a hostile work environment.

### i. First Amendment Claim

16

An actionable First Amendment retaliation claim requires Cantu to prove that: (1) he was engaged in activity protected by the First Amendment; (2) the defendant's "adverse action" caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the activity; and (3) the adverse action was motivated, at least in part, as a response to his First Amendment activity.  See Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998).  Defendants argue that the denial of Cantu's  transfer request and being called a "snitch" are not adverse actions sufficient to chill Cantu's exercise of his right to free speech.

Cantu could develop a factual record consistent with his allegations against Allen, Campbell, Reed, and Taylor that could possibly support a finding that one or more of these defendants, individually, took adverse action against Cantu to chill his alleged First Amendment right to file internal RCF reports and complaints, and that a reasonable officer in the same situations would have known that taking such adverse action was unlawful. Conley, 355 U.S. at 45-46; Bloch, 156 F.3d at 678; Perez, 466 F.3d at 427; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.  The right to be free from retaliation for exercising First Amendment rights was clearly established by 1998.  Bloch, 156 F.3d at 678.  Whether the alleged adverse acts of harassment and intimidation taken by Allen, Campbell, Reed, and Taylor would likely chill a person of ordinary firmness from continuing to file reports against fellow COs remains a question of fact, and thus the issue of qualified immunity with respect to these defendants cannot now be decided as a matter of law.  Fisher, 234 F.3d at 317. Defendants' assertion that the alleged acts of Allen (dropping an investigation in 2004), Campbell (intimidating Cantu at roll-call in 2004), Reed (intimidating and threatening Cantu in a bathroom in 2006), and Taylor (calling Cantu a "pussy" in 2006) cannot possibly be

factually developed into "chilling" retaliatory acts is not persuasive at this early stage of the lawsuit.  Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

Even construed in a light most favorable to Cantu, however, Cantu has failed to allege adverse actions taken by Warden Booker, Food Service Worker Dunbar, or Talley that could support possibly support a First Amendment retaliation claim as against these defendants.  Cantu has failed to allege direct or inferential facts that Dunbar knew Cantu had been filing incident reports against RCF personnel.  Cantu's own evidentiary response shows that Dunbar immediately reacted to Cantu's insistence upon a thorough security screening.  No reasonable person in Dunbar's situation could conclude that Dunbar's alleged reaction constituted a violation of Cantu's First Amendment rights.  Perez, 466 F.3d at 427.  Cantu's Second Amended Complaint is devoid of factual allegations with respect to Talley also.  Cantu's only factual allegation with respect to Warden Booker is Booker's receipt of a copy of Cantu's complaint about the denial of his transfer request and a fear of retaliation by Allen.  No reasonable person in Booker's situation could conclude that his receipt of a copy of Cantu's complaint constituted a violation of the First Amendment.  Booker, Dunbar, and Talley, in their individual capacities, are entitled to dismissal of Cantu's § 1983 First Amendment claims as a matter of law based on qualified immunity.  Conley, 355 U.S. at 45-46; Perez, 466 F.3d at 427; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

### ii. Fourteenth Amendment Equal Protection and Substantive Due Process Claims

Cantu's Fourteenth Amendment Equal Protection and Substantive Due Process claims allege liability based on a failure to protect Cantu from being treated differently than

other MDOC employees on the basis of race, taking adverse action against Cantu that was not taken against "similarly situated" employees, enacting and implementing arbitrary and capricious policies and procedures, and intentionally creating a hostile work environment. Construed in a light most favorable to Cantu, these Fourteenth Amendment claims, at best, involve allegations of supervisor liability and the authority to control the treatment of MDOC employees.  Cantu has failed to allege direct or inferential facts, or to respond with legal authority, that would support a finding that defendants Dunbar, Taylor, Reed, Campbell, or Talley could be held individually liable for the Fourteenth Amendment violations as alleged. Dunbar, Taylor, Reed, Campbell, and Talley, in their individual capacities, are entitled to dismissal of Cantu's § 1983 Fourteenth Amendment claims as a matter of law. Conley, 355 U.S. at 45-46; Perez, 466 F.3d at 427; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

Turning to defendants Booker and Allen, § 1983 liability cannot be imposed solely on the basis of respondeat superior liability. Taylor v. Mich. Dept. of Corr., 69 F.3d 76, 81 (6th Cir. 1995) (quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984)).  Individual liability as a supervisor attaches only as a consequence of the supervisor's own unconstitutional behavior.  Davenport v. Simmons, 192 F.Supp.2d 812, 822 (W.D. Tenn. 2001).  The plaintiff must show "that the supervisor encouraged the specific incident of misconduct or in some way directly participated in it." Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998) (quoting Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727 (6th Cir. 1996), and citing Bellamy, 729 F.2d at 421).  At minimum, the plaintiff must prove that the supervisor implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct.  Taylor, 69 F.3d at 81.

Construing the pleadings in a light most favorable to Cantu, it remains possible for

Cantu to develop a factual record that would support a finding that defendants Warden Booker and Lt. CO Allen, as supervisors, implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct of failing to protect Cantu from being treated differently as an employee because of his race, taking adverse action against Cantu that was not taken against similarly situated employees, and intentionally creating a hostile work environment. Whether Booker and/or Allen are entitled to qualified immunity with respect to the Fourteenth Amendment claims remains subject to further legal and factual development. Fisher, 234 F.3d at 317. Accordingly, defendants Booker and Talley, in their individual capacities, are not now entitled to dismissal of Cantu's Fourteenth Amendment claims on the basis of qualified immunity. Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

### F. "Constitutional Violations of Employer" and Gross Negligence

Cantu's Count X claim of "Constitutional Violations of Employer" fails to state an independent claim upon which relief may be granted. Cantu's Count XII claim of gross negligence fails to state a federal claim, and is apparently a state law claim alleged under M.C.L. 691.1407(2) to avoid governmental immunity from state tort claims. Cantu has not alleged a state tort claim, and his ELCRA claims are barred by Eleventh Amendment immunity. Defendants are entitled to dismissal of Cantu's claims of "Constitutional Violations of Employer" and gross negligence as a matter of law. Conley, 355 U.S. at 45-46; G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

### G. Cantu's Request to Amend

In his response brief, Cantu requests leave to file a Third Amended Complaint "in an attempt to cure whatever deficiency may exist in his Pleadings." Plaintiff's May 17, 2007

Brief, at 5. A proposed Third Amended Complaint is submitted by Cantu as Exhibit Q. The proposed Third Amended Complaint adds allegations that: (1) Cantu received his right-to-sue letter on December 6, 2006, and timely filed this lawsuit on January 7, 2007; (2) Talley accused Cantu "of being a racist and made derogatory statements about [Cantu's] race" in 2004; and (3) Talley, Campbell, Dunbar, Taylor, and Allen received no discipline for their reported misconduct, defendant Reed did not receive immediate discipline for his reported misconduct, and each defendant was permitted to continue working at RCF. Cantu also alleges in nine separate paragraphs slight variations of the following:

> Adverse job actions by the defendants have included, but are not limited to, harassment, discrimination, failure to investigate complaints, scheduling Plaintiff to work with his tormentors [despite knowledge of the risks of physical and psychological injury to Plaintiff], failing to discipline Plaintiff's tormentors, limitations in the job assignments that Plaintiff can receive because of the threats to his safety, [less favorable shift times and undesirable scheduling,] and failure to honor Plaintiff's transfer requests.

See Proposed Third Amended Complaint, ¶ 60, at 8; ¶ 73, at 10; ¶ 90, at 12; ¶ 110, at 15; ¶ 121, at 17; ¶ 138, at 20; ¶ 158, at 23; ¶ 176, at 25-26; ¶ 185, at 27.

Leave to amend is properly denied if the proposed amended claims would not survive a motion to dismiss. Foman v. Davis, 371 U.S. 178, 182 (1962). Consistent with the reasoning herein, Cantu's proposed amended pleadings would not provide for Title VII individual liability against the individual defendants, affect the defendants' Eleventh Amendment immunity, cure the conclusionary nature of Cantu's conspiracy claims or overcome the intracorporate conspiracy doctrine, defeat Booker's, Dunbar's, or Talley's qualified immunity as to Cantu's First Amendment claims, or defeat Dunbar's, Taylor's, Reed's, Campbell's, or Talley's qualified immunity as to Cantu's Fourteenth Amendment claims. The proposed allegations that Talley accused Cantu in 2004 of being a racist and

made "derogatory remarks" about Cantu's race are conclusionary. The proposed allegations outlining the specific types of "adverse actions" taken against Cantu, including a lack of disciplinary action, do not otherwise cure Cantu's overall pleading deficiencies. Cantu's request for leave to file the proffered Third Amended Complaint will be denied. Foman, 371 U.S. at 182.

## V. Conclusion

Defendants' motion to dismiss is hereby GRANTED, IN PART, as to plaintiff Cantu's claims of: (1) Title VI liability against the individual defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, as alleged in Counts I-III; (2) ELCRA liability against all defendants as alleged in Counts IV-VI; (3) § 1983 liability against MDOC, RCF, and defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley in their official capacities, as alleged in Counts VII-IX; (4) § 1983 First Amendment retaliation liability against defendants Booker, Dunbar, and Talley in their individual capacities, as alleged in Count VII; (5) § 1983 Fourteenth Amendment liability against defendants Dunbar, Taylor, Reed, Campbell, and Talley in their individual capacities, as alleged in Counts VIII-IX; (6) conspiracy against all defendants as alleged in Count XI; (7) "Constitutional Violations of Employer" against all defendants as alleged in Count X; and (8) gross negligence against all defendants as alleged in Count XII. Counts IV-VI and X-XII in their entirety, Counts I-III as alleged against Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley, Counts VII-IX as alleged against MDOC and RCF, and against Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley in their official capacities, Count VII as alleged against Booker, Dunbar, and Talley in their individual capacities, and Counts VIII-IX as alleged against Dunbar, Taylor, Reed, Campbell, and Talley in their individual capacities are hereby

DISMISSED.  The remainder of defendants' motion to dismiss is hereby DENIED.  Cantu

may proceed on his remaining Title VII claims against his employer MDOC and/or RCF, his

§ 1983 First Amendment retaliation claims against Allen, Campbell, Reed, and Taylor in

their individual capacities, his § 1983 Fourteenth Amendment claims against Booker and

Allen in their individual capacities, and his claim for injunctive relief.

        SO ORDERED.

Dated:  August 21, 2007

                                   s/George Caram Steeh
                                   GEORGE CARAM STEEH
                                   UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 21, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---

23