UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARIO CANTU,

                Plaintiff,          Case No.  07-10339

v.                                  District Judge GEORGE CARAM STEEH

                                  Magistrate Judge R. STEVEN WHALEN

MICHIGAN DEPARTMENT OF
CORRECTIONS, RYAN
CORRECTIONAL FACILITY,
RAYMOND D. BOOKER, KEN
ALLEN, TERRY TAYLOR, FOOD
SERVICE WORKER DUNBAR,
GEORGE REED, TODD CAMPBELL,
KATRINA TALLEY,

                Defendants.
_____/


**REPORT AND RECOMMENDATION**

      Before the Court is Defendants Michigan Department of Corrections ("MDOC"),

Ryan Correctional Facility (Ryan), Raymond D. Booker, Ken Allen, George Reed, Todd

Campbell, and Terry Taylor's Motion for Summary Judgment [Docket #41], filed January

22, 2009, which has been referred for a Report and Recommendation, pursuant to 28 U.S.C.

§636(b)(1)(B).  For the reasons set forth below, I recommend the following:


      (1) That the motion be GRANTED IN PART and DENIED IN PART as to Title VII
      claims against Defendants MDOC and Ryan Correctional Facility (Counts I-III),
      dismissing claims  pertaining to allegations preceding the March, 2006 events stated
      in Plaintiff's August 29, 2006 EEOC complaint with prejudice, but denying summary
      judgment as to allegations regarding the March, 2006 events and forward.


-1-

(2)   That the motion be GRANTED as to constitutional claims/ § 1983 against Defendants Allen (Counts  VII-IX), Campbell, and Taylor (Count VII), dismissing these Defendants with prejudice.

(3) That the motion be DENIED as to First Amendment Retaliation claims against Defendant Reed (Count VII).

(4) That the motion be GRANTED as to the Fourteenth Amendment Substantive Due Process claims against Defendant Booker (Count IX), dismissing these claims with prejudice, but DENIED as to the Fourteenth Amendment Equal Protection claims (Count VIII).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Michigan Department of Corrections ("MDOC") correctional officer formerly working at the Ryan Correctional Facility, filed suit on January 22, 2007, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*., the Michigan Elliott-Larsen Civil rights Act ("ELCRA"), M.C.L. §§37.2101 *et seq*., and 42 U.S.C. §1983, as well as claims of conspiracy and gross negligence.

The Second Amended Complaint, filed on March 28, 2007, makes the following allegations.  Plaintiff, of Caucasian and Hispanic descent, began working for the MDOC on May 3, 1998. *Second Amended Complaint,* ¶¶15-18.  On August 4, 2001, Plaintiff, then stationed at the Ryan Correctional Facility, reported to his supervising officer that he had witnessed an improper interaction between fellow officer Tamika Fulson, an African-American female, and an inmate. *Id.* at ¶25.  Plaintiff later made a statement to a supervising officer, resulting in Fulson's termination. *Id.* at ¶26.  Plaintiff alleges that as a result, he was the subject of racial and ethnic harassment, adding that "the supervisory and management staff" at Ryan was "well aware" of the harassment. *Id.* at ¶31.

Plaintiff alleges that  he was called a "'snitch,'" his car's tires were flattened,  he was threatened with bodily harm, and subjected to ethnic and racial slurs by African-American

coworkers. *Id.* at ¶¶33-34. As a result of the harassment, Plaintiff filed a grievance, but contends that because Defendant Warden Booker, an African American male, did not want "to confirm that non-black employees had been racially harassed and ethnically intimidated," the investigation into Plaintiff's allegations was "half-hearted" at best. *Id.* at ¶¶37-38. Although Plaintiff complained of harassment by certain individuals, the Ryan command staff nonetheless required him "to work mandatory overtime shifts that would place him in direct contact with the black officers who'd harassed and threatened him," placing him in "immediate apprehension for his own safety" and creating a hostile work environment. *Id.* at ¶¶39-41. Plaintiff, characterizing his working conditions at the time of the Second Amended Complaint as "hostile and dangerous," notes that while his own October and December, 2006 requests for transfer to a different MDOC facility were rebuffed, "[u]pon information and belief, black employees of the [MDOC] were freely allowed to transfer between correctional facilities." *Id.* at ¶¶44-45. Plaintiff requests injunctive and monetary relief.

On August 21, 2007, the Honorable George Caram Steeh granted Defendants' Motion to Dismiss [Docket #7] in part, dismissing Title VII claims against Defendants Booker, Dunbar, Allen, Taylor, Reed, Campbell, and Talley; dismissing ELCRA claims against all Defendants and §1983 claims against all Defendants in their official capacities; dismissing §1983 retaliation claims against Defendants Booker, Dunbar, and Talley in their *individual* capacities on the basis of qualified immunity; dismissing all conspiracy claims; and dismissing "Constitutional Violations of Employer" claims and gross negligence claims. *Docket #18,* at 22.

The surviving claims are listed as follows: (1) Title VII claims of racial discrimination, hostile work environment, and retaliation against the MDOC and Defendants

Ryan Correctional Facility (Counts I-III); (2) First Amendment retaliation claims against Defendants Allen, Campbell, Reed, and Taylor in their *individual* capacities (Count VII); and (3) Fourteenth Amendment equal protection and due process claims against Defendants Booker and Allen (Counts VIII-IX).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. ANALYSIS

### A. Title VII - Time Barred Claims

Defendants argue first that Plaintiff's claims of Title VII violations preceding the events alleged in his August 29, 2006 Equal Employment Opportunity Commission ("EEOC") charge should be dismissed as stale. *Defendants' Brief,* 7-9. On a related note, they contend that Plaintiff's allegations of "disparate treatment, harassment, discrimination and retaliation going back to 2001" should be dismissed because they exceed the scope of the EEOC's investigation. *Id.* at 9. However, Defendants concede that allegations contained in Plaintiff's EEOC charge stating that in March, 2006 (1) Defendant Reed's assaulted him and threatened him and (2) supervisory staff failed to escort Reed off the premises (the allegedly customary response to a threat by an employee) are timely. *Id.* at 7.

### 1. Timeliness

"Plaintiffs must typically file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit." *Amini v. Oberlin College,* 259 F.3d 493, 498 (6th Cir. 2001); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 407 (6th Cir.1999). "Where the alleged unlawful employment practice occurs in a state (such as Michigan) which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file her

-5-

EEOC charge within 300 days of the alleged unlawful employment practice." *Doan v. NSK Corp.,* 97 Fed.Appx. 555, 557, 2004 WL 957913, *2 (6th Cir. 2004)(*citing Amini* at 498).

Only EEOC charges of retaliation or discrimination filed within 300 days after the retaliatory or discriminatory incident are actionable. *National R.R. Passenger Corp. v. Morgan* 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). The Court reasoned that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* Accordingly, Plaintiff's August 29, 2006 EEOC filing would be timely as to discriminatory and/or retaliatory events occurring on November 3, 2005 (300 days prior to the filing) and forward.[1]

> However, as to hostile work environment claims, the *Morgan* Court held as follows:
>
> "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

*Morgan,* 536 U.S. at 117, 122 S.Ct. at 2074. Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act* that is part of the hostile work environment." *Id.,* 536 U.S. at 118, 122 S.Ct. at 2075 (emphasis added). Conceivably,

---

[1]However, Plaintiffs are not barred "from using the prior acts as background evidence in support of a timely claim." *Morgan,* 536 U.S. at 113, 122 S.Ct. at 2061.

under *Morgan*, the Complaint's allegation that Plaintiff experienced a hostile work environment from August 4, 2001 forward would be actionable.[2]

## 2. The Scope of the EEOC Charges

However, for different reasons, none of the Plaintiff's allegations of Title VII violations predating March 4, 2006 are actionable. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Michigan Dept. of Corrections,* 250 F.3d 336, 342 (6th Cir. 2001). Title VII "claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that charge." *Id.*; *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 547 (6th Cir.1991).

Plaintiff's August 29, 2006 EEOC filing contains absolutely no reference to civil rights violations prior to March 4, 2006.[3] *Docket #43,* Exhibit U. His failure to include the

---

[2]In a hostile work environment claim, the Plaintiff need not show that earlier qualifying events occurred within 300 hundred days of the incident precipitating the EEOC filing. *Morgan,* 536 U.S. at 118, 122 S.Ct. at 2075.

[3]
Plaintiff's August 29, 2006 EEOC claim states as follows:

> "On March 4, 2006, I was threatened by a co-worker [Defendant Reed]. It was witnessed by a number of people. The normal practice, state-wide is for the offender to be placed on a stop order and be removed [from] the workplace until an investigation is completed. In this case, nothing was done. On March 9, 2006, the same co-worker physically assaulted me. Again, there were witnesses. The offender was not put on stop order. He was moved to a different shift with no punishment. after this, I was denied overtime, as I could not work on day shift, when he worked. I went out on a stress leave for a month and a half. I am aware of Correctional Officers who have threatened female co-workers and/or black co-workers who have been escorted off the premises and not allowed to work while an investigation is conducted. ¶ I believe I have been discriminated by being subjected to different terms and conditions of employment based on my national origin, Hispanic, and my gender, male, in violation of Title VII of the Civil Rights Act of 1964."

-7-

earlier events in his EEOC charge "deprives this [C]ourt of subject matter jurisdiction" to consider the events preceding March 4, 2006.  *Strouss,* 250 F.3d at 342.

**B.   The Merits of Plaintiff's Remaining Title VII Claims**

Defendants contend that Plaintiff cannot establish the elements of his Title VII claims of disparate treatment (Count I), hostile work environment (Count II), and retaliation (Count III).  Defendants argue first that Plaintiff cannot show that the allegedly unlawful conduct was based on his national origin.  *Defendants' Brief* at 9-10.  Second, they argue that Plaintiff's failure to show employer liability is fatal to the hostile work environment claim. *Id.* at 10-12.   Third, Defendants contend that Plaintiff's inability to prove that he was either the subject of "adverse action" or treated differently than similarly situated individuals requires dismissal of the disparate treatment claim.  *Id.* at 12-15.   Likewise, fourth, they contend that the retaliation claim is defeated by Plaintiff's inability to show "adverse action." *Id.* at 15.

**1.   Applicable Law**

While Plaintiff alleges multiple instances of harassment by coworkers, he has offered no evidence that anyone in a decision-making position *expressly* stated a desire to remove, demote or stymie his career prospects or those of any other employee based on national origin.  Plaintiff's claim of national origin discrimination is thus based on circumstantial evidence.  Accordingly, the burden-shifting approach, first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies.  *See also Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003).   Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination.  If he can do so, the

---

*Docket #43,* Exhibit U.

burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[4]   If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.[5]

### a.  Disparate Treatment

In order to establish a prima facie showing of disparate treatment under Title VII, Plaintiff must introduce sufficient evidence that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination, *i.e.*, "treated differently from similarly situated individuals outside of [the] protected class." *Mitchell v. Toledo Hosp.* 964 F.2d 577, 582 (6th Cir. 1992); *see also Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824.

### b.  Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must show that "'(1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or

---

[4]This is a burden of production.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

[5]At present, Defendants argue only that Plaintiff cannot establish the elements of a disparate treatment claim.  Because Defendants' argument does not extend beyond the elements of a *prima facie* case, the Court does not reach the question of whether non-retaliatory reasons exist for their actions.  *Defendants' Brief* at 13-15.

preventive actions.'" *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 600 (6th Cir. 2007)(*citing Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir.2002)). "A claim is evaluated both objectively and subjectively." *Kelly v. Senior Centers, Inc.,* 169 Fed.Appx. 423, 428, 2006 WL 304670, *4 (6th Cir. 2006). "'The conduct must be severe or pervasive enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive.'" *Id.* (*citing Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir.1999)(internal punctuation added)).

### c.  Retaliation

In making a *prima facie* case of retaliation Title VII retaliation, the plaintiff "must demonstrate: (1) that she engaged in activity protected by Title VII; (2) that the defendant knew of this exercise of her protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff, and (4) that there is a causal connection between the protected activity and the adverse employment action." *Strouss, supra*, 250 F.3d 336, 342.

### 2.  Defendants' Arguments

Arguments for dismissal of the Title VII claims, based in large part on overlapping factual material, are considered in the order presented by Defendants.

### a.  National Origin and Racial Discrimination

Defendants argue that Plaintiff cannot show that the allegedly disparate treatment and hostile work environment was based on his national origin. *Defendants' Brief* at 9-10.  They contend that their alleged actions cannot be attributed to national origin animus. *Id.*

Contrary to Defendants' initial contention that Plaintiff cannot show that the hostile

work environment and disparate treatment were attributable to his "national origin," at least

three of Plaintiff's coworkers have testified that Plaintiff was referred to as a "chulpa," a

derogatory reference to a Mexican individual. *Docket #43,* Exhibit B at pg. 21, Exhibit H

at pg. 15, Exhibit L at pgs. 25-26. Further, even assuming that the derogatory references to

Plaintiff's national origin do not by themselves amount to a hostile work environment, the

text of Plaintiff's EEOC complaint alludes to racial, as well as national origin discrimination.

Defendants argument that because Plaintiff check only the "sex" and "national origin" boxes

in his EEOC complaint he is now precluded from alleging *racial* animus is without merit.

"The determinative inquiry" is whether Plaintiff put "alleged sufficient facts in his EEOC

Complaint to put the EEOC on notice" of his charge of racial discrimination, despite his

failure to check the "race" box on the EEOC's complaint form. *Dixon v. Ashcroft,* 392 F.3d

212, 217 (6th Cir. 2004). The text of Plaintiff's charge, found at fn 5, *supra,* alleges that in

contrast to his own situation in which Defendant Reed was permitted to continue working,

MDOC employees threatening "black co-workers" would be immediately "escorted off the

premises." *Docket #43,* Exhibit U.

Further, as a substantive matter, Plaintiff's deposition testimony and supporting

documents create an inference of unlawful racial and/or national origin discrimination.

Plaintiff alleges that at the time of the March, 2006 threat on his life, he had been referred

to repeatedly as a "snitch," apparently in reference to his August, 2001 report of misconduct

by Fulson, a popular African American coworker.[6] *Id.* Exhibit A, pg. 96. He has testified

that African-American employees who reported other Black co-workers were not so labeled.

---

[6]

As discussed *supra,* because Plaintiff did not include events predating March 4, 2006 in his
EEOC complaint, they are not actionable under Title VII. The incidents occurring before
Reed's alleged threat and assault are provided for context only.

*Id.* at pg. 97.

Plaintiff also testified that Ryan's warden, Defendant Booker, an African-American, "did not want an investigation to confirm that non-black employees had been racially harassed." *Id.* at pg.105. In this support of this contention, Plaintiff stated that although a non-black employee, Officer Stabnick, had his new car "keyed" twice in the employee parking lot, the MDOC declined to open an investigation. *Id.* at 111-112. Plaintiff heard second-hand that Defendant Allen, an African-American lieutenant at the facility, made a racially derogatory remark about Plaintiff to other Black employees. *Id.* at pg. 116. After Plaintiff was harassed by Defendant Campbell, an African-American, in September, 2004, Plaintiff's timely complaint about the matter to Defendant Booker was assigned to Defendant Allen, but terminated as "untimely,"although terminations on this basis were rare at the facility. *Id.* at 124-135. *Id.,* Exhibit C at pgs. 104-105.

It is within this factual context that on March 4, 2006 Defendant Reed allegedly threatened Plaintiff, saying "snitches get stitches," *id.* at pg. 152*,* and "[s]nitches get killed in here" *Id.* at pg. 153. When Plaintiff asked Reed why he made the threat, he replied that Plaintiff "had something coming soon." *Id.* at pg. 158. Notwithstanding the fact that Plaintiff reported the event almost immediately, Reed was not escorted from the premises - in contrast to an earlier situation in which an employee threatening a black female coworker was immediate removed from the workplace. *Id.* at 148, *Docket #41, see also* Exhibit 7 at pg. 19 of 19.

On March 9. 2006, in the presence of several witnesses in the roll call area, Reed threw his coat on the floor, strode up to Plaintiff, and, cracking his knuckles, knocked Plaintiff's cap off twice, stating that Plaintiff had "something coming real soon." *Id.* at pg.

-12-

164.   Despite being informed that Plaintiff had been assaulted by Reed, Warden Booker proposed that Reed and Plaintiff could both "stay at work that night," directing supervising staff to "keep them separated." *Id.* at pgs. 172-173.  Plaintiff, asserting that Reed was "three times" his size, informed Captain Prather that he could not work "under [those] conditions." *Id.* at pg. 173.  Plaintiff requested a stress leave due to "everything I was subjected to on a daily basis." *Id.* at 210.

Plaintiff was subsequently placed on a stress leave on June 23, 2006 and did not return until August 10, 2006. *Id.* at pg. 183.  At roll call on Plaintiff's first day back, Defendant Taylor, an African American, called Plaintiff a "pussy" within earshot of Plaintiff and Officer Stabnick. *Id.* at 183-184.  Officer Stabnick testified that Taylor accused Stabnick's "boys" of lying about the Reed incident. *Id.,* Exhibit B at pg. 45.  Plaintiff requested a transfer to MDOC's Thumb Correctional Facility in October, 2006 and again on December 11, 2006, informing Defendant Booker that he believed that he was being harassed. *Docket #43,* Exhibit C at pgs. 46-47.  Defendant Booker states that he could not recall whether he investigated Plaintiff's report of retaliation, despite the fact that such complaints were customarily investigated. *Id.*   Plaintiff filed suit in this Court on January 22, 2007.

Parties agree that on September 12 or 13, 2007, after the MDOC received death threats on Plaintiff's life, supervising staff attempted to convince Plaintiff to transfer to MDOC's White Lake facility. *Id.,* Exhibit A  at 223.  Plaintiff, noting that the White Lake facility was a women's prison, expressed concern that as a male officer, he would be subject to false accusations, but countered with a request to be transferred to the Thumb Correctional Facility. *Id.* at pgs. 224, 233.   He received no immediate answer to his request. *Id.*  Plaintiff remained on administrative leave after the MDOC received a second threat.  However, Booker acknowledged that Plaintiff had been nonetheless scheduled to return to his Ryan

-13-

position in December, 2007, despite the fact that the MDOC had not determined the source of the threats. *Id.*, Exhibit C at pg. 83. It was determined that Plaintiff should be kept on administrative leave only after the MDOC received a third threat in December, 2007 . *Id.* Plaintiff was finally transferred to the Thumb Correctional Facility in January, 2008.

Under Title VII, Plaintiff has shown questions of fact as to a prima facie case of disparate treatment and hostile work environment based on race and national origin.

### b.  Employer Liability - Hostile Work Environment

Defendants next argue that Plaintiff's failure to show employer liability is fatal to the hostile work environment claim. *Defendants' Brief* at 10-12. They contend that contrary to Plaintiff's allegations, all of his complaints were promptly investigated. *Id.* at 11. Defendants point out Plaintiff has acknowledged that "Reed never did or said anything disparaging" toward Plaintiff after receiving an unpaid suspension as a result of the March, 2006 incidents. *Id.*

Again, setting aside the non-actionable events preceding March, 2006, a question of fact nonetheless remains as to whether employer liability exists against Defendants MDOC and the Ryan Correctional Facility. To be sure, Defendants Reed and Taylor received suspensions as a result of the above-described incidents. However, at a minimum, (1) Booker's failure to remove Reed from the facility's premises after he threatened and assaulted Plaintiff (requiring Plaintiff to leave the premises in fear of being attacked) and (2) Booker's apparent failure to investigate Plaintiff's December, 2006 reports of retaliation support the allegations of employer liability.

### c.  Adverse Action, Similarly Situated Individuals-Disparate Treatment

Third, Defendants contend that Plaintiff's inability to prove that he was either the

-14-

subject of "adverse action" or treated differently than similarly situated individuals requires dismissal of the Title VII disparate treatment claim. *Id.* at 12-15.

If nothing else, Plaintiff has testified that his unwillingness to work on Reed's shift and his stress leave, precipitated by Defendants' actions (or inaction), prevented him from receiving holiday pay, "shift differential pay," and any other overtime pay for which he would have been eligible. *Docket #43,* Exhibit A at pg. 230. "A materially adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Tepper v. Potter,* 505 F.3d 508, 515 (6th Cir.2007)(internal citations omitted). Because Plaintiff was unable to receive anticipated overtime as a result of the administrative leave - allegedly precipitated by the March, 2006 incidents and the Ryan Facility's lackadaisical response - a question of fact remains as to whether Plaintiff experienced an adverse action.[7]

The events from March 4, 2006 forward also support Plaintiff's claim of disparate treatment. While Defendants note that Reed was suspended for threatening and assaulting Plaintiff, evidence submitted with their motion indicates that when an African-American was threatened with bodily harm, her accuser was immediately removed from the premises pending investigation. *Docket #41,* Exhibit 7 at pg. 19 of 19. As noted above, while Defendant Booker testified that an investigation would typically be opened in the event that a staff member reported retaliation, he could not recall whether an investigation was opened

---

[7]

Plaintiff's claims that his transfer to the "bubble," a fairly isolated position which required overseeing prisoners and inventorying equipment, also amounts to an adverse action. *Plaintiff's Brief* at 12. However, Plaintiff's transfer to the bubble predated his EEOC filing by at least one year. *Docket #43,* Exhibit A at pg. 18. While the transfer might have evidentiary value, it is not actionable.

into Plaintiff's December 11, 2006 allegations.  *Docket #43,* Exhibit C at pgs. 46-47.
African-American Defendant Booker's alleged failure to investigate Plaintiff's allegations,
along his acknowledgment that such matters were customarily investigated, creates at least
an inference that his inaction was prompted by racial or national origin animus.

### d.  Adverse Action - Retaliation Claim

Defendants contend next that the retaliation claim is defeated by Plaintiff's inability
to show "adverse action." and proof of a hostile work environment. *Id.* at 15.  Defendants
assert that their above-discussed "no adverse action" argument regarding the "disparate
treatment" claim applies to the Title VII retaliation claim as well.    Contrary to this
assumption, Title VII's "anti-retaliation provision, unlike the substantive provision, is not
limited to discriminatory actions that affect the terms and conditions of employment."
*Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64, 126 S.Ct. 2405, 2412-2413,
165 L.Ed.2d 345 (2006).  Thus, in determining whether an "adverse action" occurred in the
retaliation context, the Court is not limited to "tangible employment action[s]" as in a
disparate treatment claim.  *Id.* at 64, 2413.  Further, because Plaintiff alleges retaliation as
a result of Plaintiff's EEOC filing, the post-August 29, 2006 allegations can be said to
"reasonable grow" out of the underlying charges.  *Strouss, supra,* 250 F.3d at 342.  Booker's
March, 2006 failure to remove Reed from the premises and his December, 2006  failure to
investigate Plaintiff's report that other staff members were harassing him - along with the
fact that Plaintiff 's request to transfer to the Thumb facility was ignored or denied -  raises
a question of fact as to whether Plaintiff experienced adverse action as a result of his August

-16-

29, 2006 EEOC filing.[8]

### C.    42 U.S.C. §1983 Claims - Timeliness

Defendants argue that Plaintiff's claim of constitutional violations predating March 23, 2005 are barred by the statute of limitations. *Defendants' Brief* at 16.  Contrary to this assertion, for civil rights suits filed in federal court in Michigan under §1983, the statute of limitations is three years.  *See* M.C.L. § 600.5805(10); *NAACP, Detroit Branch v. Detroit Police Officers Ass'n (DPOA),* 676 F.Supp. 790, 794 (E.D.Mich.1988) (Gilmore, J.); *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986).  *See also Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985)(In a § 1983 action, federal courts apply state personal injury statutes of limitations).   Because Plaintiff filed suit on January 22, 2007, all constitutional claims based on events subsequent to January 22, 2004 are actionable.

However, I disagree with Plaintiff's contention that the Ryan and MDOC's "over-arching policy of discrimination" allows the Court to consider events occurring as far back August, 2001.  *Plaintiff's Brief* at 17 (*citing Janikowski v. Bendix Corp.,* 823 F .2d 945, 948 (6th Cir. 1987).   *McCune v. City of Grand Rapids* 842 F.2d 903, 905 (6th Cir.1988)( *citing Wilson, supra,* 471 U.S. at 268-71, 105 S.Ct. at 1943-45).  Under federal law, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should

---

[8]

In finding against Defendants MDOC and Ryan Correctional Court on the question of retaliation, this Court is mindful that on August 21, 2007, the Honorable George Caram Steeh dismissed First Amendment retaliation claims against Defendant Booker. *Docket #18* at 18.  This Court, in finding a question of fact regarding the Title VII retaliation claims, has now had the benefit of reviewing Booker's November 21, 2008 deposition testimony regarding the December, 2006 reports of harassment and other events preceding Plaintiff's January, 2008 transfer.

have discovered it through the exercise of reasonable diligence." *McCune v. City of Grand Rapids* 842 F.2d 903, 905 (6th Cir.1988)( *citing Wilson, supra,* 471 U.S. at 268-71, 105 S.Ct. at 1943-45)(*citing Sevier v. Turner,* 742 F.2d 262, 273(6th Cir.1984)).

Plaintiff claims that he experienced harassment after reporting the misbehavior of a coworker in August, 2001, alleging that the harassment continued into December, 2001 when his tires were slashed in the facility's parking lot. *Docket #43,* Exhibit A at pg. 71. Nonetheless, following the 2001 events, he did not file another harassment complaint with his supervisors until July, 2003 when Defendant Talley (now dismissed from this action) allegedly made racially derogatory remarks. Plaintiff filed his next harassment complaint in September, 2004, when he complained that Defendant Campbell deliberately hit the bill of his cap. *Id.* at pgs. 124-125. The year-plus gaps between Plaintiff's internal complaints undermine his claim of "ongoing" discrimination for the purposes of determining the limitations period. As such, Plaintiff's constitutional claims regarding the 2001 and 2003 events are barred by the statute of limitations.

### D.    First Amendment Retaliation Claims

#### 1. Applicable Law

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir. 2004)(*citing Thaddeus-X v. Blatter,* 175 F.3d 378, 394-95 (6th

Cir.1999)).[9]

### 2. Individual Defendants

#### a. Defendant Campbell

Plaintiff alleges that on September 9, 2004, Defendant Campbell, an African-American corrections officer,  twice hit the bill of Plaintiff's baseball cap, causing the cap to hit Plaintiff's nose.  *Docket #43,* Exhibit A at pg. 124-125.  A review of Plaintiff's initial complaint (and a cross complaint filed by Campbell) defeats the allegation that Campbell's inappropriate touching was motivated by either retaliatory or racial animus, but was rather the result of a confrontation between the two officers at the front gate earlier the same day.  *Docket #41-4* at pgs. 7-9 of 43.  *See Danelishen v. Frank* 1991 WL 203749, *4 (6th Cir. 1991); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982)("[P]ersonality conflicts alone" are insufficient to show a constitutional violation.  Further, even assuming that Campbell acted with retaliatory motives, hitting Plaintiff's cap twice, by itself, does not amount to an adverse action sufficient to sustain the First Amendment claim, and that claim should be dismissed as to Defendant Campbell.

#### b. Defendant Allen

Plaintiff alleges that Lieutenant Allen's handling of the  September 9, 2004 incidents was colored by improper motives.   However, the results of the investigation (assigned to Allen by Defendant Booker) do not support the allegation that Allen was  motivated by either

---

[9]

Count VII of the *Second Amended Complaint* alleges "Whistleblower Retaliation." *Id.* at ¶¶114-156.  As discussed, Plaintiff's claims regarding his August, 2001 misconduct report are time-barred.  However, the undersigned construes the retaliation claim consistent with the District Court's analysis. *Docket #18* at 16-17 (*citing Block v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

retaliatory and/or racial animus. To the contrary, Allen's December 17, 2004 summation reflects an evenhanded account of both officers' positions and his reasons for finding misconduct by both officers. *Id.* at pgs. 13-18.

Moreover, while Plaintiff asserts that the investigation was untimely, he admits that Defendant Booker, not Allen, was wholly responsible for the failure to order the investigation promptly. *Docket #43,* Exhibit A at pgs. 135. Although Plaintiff alleges that Defendant Allen stated at one point "white guys all stick together" (denied by Allen), this comment, by itself, is not sufficient to support the claim that Allen engaged in retaliation or discriminatory acts against Plaintiff. *Id.,* Exhibit D at 88. *Thaddeus-X, supra,* 175 F.3d at 397.

### c.  Defendant Taylor

At roll call on Plaintiff's first day back from his June to August, 2006 stress leave, Terry Taylor, an African American, called Plaintiff a "pussy" within earshot of Plaintiff and Officer Stabnick. *Docket #43,* Exhibit A at 183-184.   While Defendant Taylor's alleged statement  is certainly reprehensible, it does not constitute an "adverse action" sufficient to "deter a person of ordinary firmness" from exercising his First Amendment rights. *Thaddeus-X, supra,* 175 F.3d at 397. Likewise, Taylor's alleged remarks to coworkers that Reed had been framed for the alleged March, 2006 assault do not amount to adverse action. As such, claims against Defendant Taylor should be dismissed.

### d.  Defendant Reed

On the other hand, Defendant Reed's March 4, 2006 "snitches get stitches" threat against Plaintiff and the March 9, 2006 assault create a question of fact as to all three elements of a First Amendment retaliation claim. Reed's "snitches" comment was a clear

allusion to Plaintiff's previous complaints against other coworkers - an activity protected by the First Amendment.   Reed's threat of physical harm would without doubt deter an individual of ordinary firmness.   Third, by allegedly stating that "snitches get killed," (confirmed by other coworkers) Reed created a causal connection between Plaintiff's protected conduct, *i. e.,* the filing of earlier complaints  and the threat of physical violence.

### E.   Fourteenth Amendment Claims  Warden Booker and Lt. CO Allen

#### 1.  Applicable Law

##### a.  Equal Protection

"[A] plaintiff asserting a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 must prove the same elements required to establish a disparate treatment claim under Title VII."   *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000). "[I]n order to establish a *prima facie* case, the plaintiff must set forth the following elements: 1) he was a member of a protected class; 2) he was subject to an adverse employment action; 3) he was qualified for the job; and 4) for the same or similar conduct, he was treated differently from similarly situated non-minority employees." *Id.*

##### b.  Substantive Due Process

Substantive due process claims "are premised on the alleged violation of a constitutionally protected liberty interest, within the meaning of the Fourteenth Amendment, in their personal bodily integrity." *Lillard v. Shelby County Bd. of Educ.* 76 F.3d 716, 725 (6th Cir. 1996); *Ingraham v. Wright,* 430 U.S. 651, 673-74, 97 S.Ct. 1401, 1413-14, 51 L.Ed.2d 711 (1977).  Finding that an instructor's one-time slap of a student  "f[e]ll far short of brutal, or inhumane, or any of the other adjectives employed to describe an act so vicious

-21-

as to constitute a violation of substantive due process," the Court held that the act in question must "shock the conscience." *Id.*

### 2. Individual Defendants

#### a. Defendant Booker

A question of fact exists as to whether Booker is liable for Equal Protection violations. As discussed in Section **III, B,2,a-d**, *supra*, the partial survival of Plaintiff's Title VII claims is attributable in large part to Booker's alleged actions. Despite the fact that Defendant Reed both threatened and assaulted Plaintiff within a six-day period, Booker proposed that Reed and Plaintiff could "stay at work that night," despite the fact that previously, an employee threatening an African-American staff member had been immediately escorted from the premises. *Docket #41,* Exhibit 7 at pg. 19 of 19. Plaintiff's allegation that he lost overtime and holiday pay during his June to August, 2006 "stress leave" (reasonably attributable to the March, 2006 threat against his life) constitutes adverse action. While Booker acknowledged that he customarily initiated investigations into employee complaints of harassment, he testified that he could not recall whether an investigation was launched into Plaintiff's December, 2006 complaints. *Docket #43,* Exhibit C at pgs. 46-47. Plaintiff has testified that the transfer request directed to Booker went unheeded for over approximately 12 months. Moreover, Booker acknowledged that despite the fact that the MDOC received two death threats against Plaintiff in the fall of 2007, Plaintiff had been nonetheless scheduled to resume work at the Ryan Correctional Facility in December, 2007. *Id.* at pg. 83. Plaintiff's work return was canceled only because the institution received a third threat. *Id.*

However, Plaintiff's allegations, examined in their most favorable light do not "shock

-22-

the conscience." *Lillard, supra,* 76 F.3d at 725.  While Plaintiff may be able to prove disparate treatment necessary to sustain his Equal Protection claim, his lack of physical injury, coupled with the absence of evidence showing that Booker *affirmatively* placed him in harm's way, defeats the substantive due process claim.  *Braley v. City of Pontiac,* 906 F.2d 220, 226 (6th Cir. 1990).

### b.  Allen

Plaintiff cannot show that Allen's handling of the September 9, 2004 incident or isolated racial comments rose to the level of either an equal protection or substantive due process violation.  As discussed *supra,* complaints submitted by both Campbell and Plaintiff, along with Allen's December 17, 2004 report, show an absence of either racial or retaliatory motives. *Id.* at pgs. 13-18.  Further, while Plaintiff previously alleged that the investigation was untimely assigned to defeat Plaintiff's claim against his Black coworker, he now acknowledges that Defendant Booker, rather than Allen, was responsible for the failure to order a prompt investigation.  *Docket #43,* Exhibit A at pgs. 135.  Although Plaintiff alleges that Defendant Allen stated at one point  "white guys all stick together," this claim, by itself, is not sufficient to support the claim that Allen engaged in retaliation or discriminatory acts. *Id.,* Exhibit D at 88.

### F.    Qualified Immunity

#### 1.  Applicable Law

Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  There are generally

two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). More recently "the Supreme Court reconsidered the sequential inquiry set forth in *Saucier*, "concluding that, 'while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.'" *Moldowan v. City of Warren*, — F. 3d — 2009 WL 2176640, at *13 (6th Cir. 2009)(*citing Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808 (2009)).

### 2. Individual Defendants

#### a. Defendants Cambell, Allen, and Taylor

As discussed above, Plaintiff cannot show a constitutional violation by these Defendants. In the absence of a constitutional violation, the Court need not determine whether the right in question is clearly established. *Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).

#### b. Defendants Reed and Booker

As discussed *supra,* in Section **III, D, 2, d**, Reed's March, 2006 threats and assault, corroborated by coworkers, creates a factual question sufficient to survive the present motion. Defendants make no showing that threatening a coworker with deadly assault - either construed as an independent claim or in the retaliation context– was not clearly established as of March, 2006. *Thaddeus-X, supra,* 175 F.3d 378, 394-95 (6th Cir.1999). Likewise, Plaintiff's factual allegations in support of his Equal Protection claims against Booker regarding his treatment subsequent to Reed's assault, Plaintiff's stress leave, and Booker's possible failure to respond to Plaintiff's December, 2006 complaints of continued harassment state violations of well-established rights at the time of these events.

# IV.   CONCLUSION

For these reasons, I recommend the following:

(1) That the motion be GRANTED IN PART and DENIED IN PART as to Title VII claims against Defendants MDOC and Ryan Correctional Facility (Counts I-III), dismissing claims  pertaining to allegations preceding the March, 2006 events stated in Plaintiff's August 29, 2006 EEOC complaint with prejudice, but denying summary judgment as to allegations regarding the March, 2006 events and forward.

(2)  That the motion be GRANTED as to constitutional claims against Defendants Allen (Counts   VII-IX), Campbell, and Taylor (Count VII), dismissing these Defendants with prejudice.

(3) That the motion be DENIED as to First Amendment Retaliation claims against Defendant Reed.

(4) That the motion be GRANTED as to the Fourteenth Amendment Substantive Due Process claims against Defendant Booker (Count IX), dismissing these claims with prejudice, but DENIED as to the Fourteenth Amendment Equal Protection claims (Count VIII).

Any objections to this Report and Recommendation  must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 12, 2009

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 12, 2009.

s/Susan Jefferson
Case Manager

-26-